UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEANDERYL CRAWFORD,

     Petitioner,                        Civil Action No. 2:08-cv-14569

v.                                  HON. MARIANNE O. BATTANI

CINDI CURTIN,

     Respondent.

_____/

**OPINION AND ORDER DENYING
PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING
TO ISSUE A CERTIFICATE OF APPEALABILITY, GRANTING
PERMISSION FOR AN APPLICATION FOR LEAVE TO PROCEED *IN
FORMA PAUPERIS* ON APPEAL, AND DENYING MOTION TO AMEND AS MOOT**

## I.   INTRODUCTION

This is a habeas case filed by a Michigan prisoner under 28 U.S.C. § 2254.  Petitioner

Seanderyl Crawford is incarcerated by the Michigan Department of Corrections, currently housed

at the Earnest C. Brooks Correctional Facility in Muskegon Heights, Michigan, where he is

serving sentences for the following convictions: fourteen to thirty years for three counts of armed

robbery, ten to twenty years for home invasion, and two to four years for impersonating a police

officer and felonious assault.  Those sentences all run concurrently with each other and

consecutive to a two-year sentence for a felony-firearm conviction.  Petitioner's convictions

occurred on December 12, 2005, following a bench trial in the Circuit Court in Wayne County,

Michigan.  He was sentenced on January 4, 2006.

On October 28, 2008, Petitioner filed his habeas petition, *pro se*, challenging the

constitutionality of his convictions.  He raised claims concerning the sufficiency of the evidence,

double jeopardy, his right to counsel at a critical stage, and his competency. Subsequently after Respondent filed her answer and the Rule 5 materials, he filed a motion to stay his habeas proceedings. He asked for a stay so he could return to state court to exhaust claims concerning the effectiveness of trial counsel and his competency. The Court granted the motion. See Op. & Order, May 28, 2009, ECF No. 11.

After unsuccessfully pursuing his claims in the state courts, Petitioner returned to this Court, asking to reopen his habeas proceedings and address only his double-jeopardy claim and dismiss the other three claims. The Court granted his request. See Op. & Order, Feb. 2, 2010, ECF No. 13.

On December 19, 2011, Petitioner filed another habeas petition raising claims concerning his unlawful arrest, the prosecutor's conduct, double jeopardy, and the effectiveness of trial counsel. The case was docketed with a new case number, 2:11-cv-15537, and assigned to the undersigned. In that case, the Court ordered Respondent to file an answer and the Rule 5 materials by June 25, 2012. Rather, Respondent construed the petition as a second petition and moved to transfer the case to the Untied States Court of Appeals for the Sixth Circuit under *In re Sims*, 111 F.3d 45, 47 (6th Cir. 1997). The Court denied Respondent's motion, construed the petition as an amended petition, and consolidated the cases under this case number, and dismissed case number 2:11-cv-15537. The Court now understands the petition to be raising the four claims listed in the amended petition.

After a review of the pleadings, the Court concludes that Petitioner's convictions and sentences are constitutionally sound. Therefore, the Court will deny the petition. The Court also will decline to issue Petitioner a certificate of appealability but will grant him permission to file

2

an application for leave to proceed *in forma pauperis* on appeal, should he choose to appeal the Court's decision. Given this decision, the Court will deny Petitioner's motion to amend his habeas petition, filed December 21, 2012, as moot.

## II.    BACKGROUND

Petitioner's troubles in this case arise because of an armed robbery that occurred on August 11, 2005, at the home of Maurice Thompson. The prosecution's theory was that Petitioner and Tremain Jones entered Thompson's home, representing themselves as police officers. They were looking for drugs. Once inside, they tied up some of the adults in the home, stole items, and beat up Thompson and another individual. The defense argued that Petitioner was not an active participant in the beginning but only later took some items, that he was not carrying a badge or a gun, and neither beat anyone nor assisted in beating anyone. Trial testimony revealed the following pertinent facts.

Thompson testified that he lived in his home with his girlfriend Coralee Woods-Kirkland and her three children, his uncle Dallas Thomas, and friend Norman Shannon. He testified that, on the day in question, Kirkland woke him because she heard some noise outside the bedroom. When he opened the bedroom door, he saw a guy standing there with what he thought was a gun pointed at his head hollering police. The guy told him to get on the floor and when he refused, the guy hit him in the head with the gun. He then got on the floor and the guy started to stomp on him. He saw Kirkland and Thomas tied up with restraints. He identified Petitioner in-court as one of the two men that entered his house. He identified Jones as the man who was armed and beat him.

3

Kirkland testified that she woke Thompson when she heard a noise, a loud knock on the door. Petitioner and Jones were on the other side of the door. Jones was wearing a badge and a walkie-talkie, and carrying a gun. Both men identified themselves as police officers. She said Jones took her into the living room, tied her up, and told her to lie on the floor. Jones asked Thompson about the drugs. He then hit him in the face with a gun. Thompson's uncle was restrained and lying on the kitchen floor. She identified Petitioner as one of the intruders. She could not say if he had a gun but knew Jones did because she saw him beat Thompson with it.

Thomas was sleeping on the couch in the front room of the house when he heard a knock on the door. Because he thought it was Shannon, he answered the door. When he opened the door, a man, who wore a badge around his neck, put a gun to his face and pushed him into the living room. He said he was immediately tied up and put on the kitchen floor face down. One of the men identified himself as a police officer. Petitioner was later identified as that man. Thomas testified that Petitioner stomped on him and went through his pockets. He said he suffered from seizures and had one during the incident. He was hospitalized afterward.

Petitioner testified in his own defense. He admitted that he went to the house that night with Jones, looking for drugs. He admitted taking various items from the house but denied that he committed any violent acts. He said he never had a gun or a badge.

The trial judge found the testimony of the victim witnesses credible and Petitioner's testimony not credible. Petitioner was convicted on all counts except the count involving the robbery of Shannon. He was sentenced as described.

Following his sentencing, Petitioner, through counsel, filed a claim of appeal in the Michigan Court of Appeals, raising one claim: whether there was sufficient evidence presented

4

to support his felony-firearm conviction.  He also filed a brief, *pro per*, raising two additional

claims: his armed-robbery and felonious-assault convictions violated the Double Jeopardy

Clause, and the lineup was tainted.  The Court of Appeals affirmed his convictions.  *People v.*

*Crawford,* No. 267728, 2007 WL 1695704, at *1, *3 (Mich. Ct. App. June 12, 2007).  Petitioner

filed an application for leave to appeal the Court of Appeals's decision with the Michigan

Supreme Court, raising the same claims.  The application was denied on October 29, 2007.

*People v. Crawford*,  705 N.W.2d 133 (Mich. 2005) (unpublished table decision).  On February

19, 2008, the Michigan Supreme Court also denied his motion for reconsideration.  *People v.*

*Crawford*, 744 N.W.2d 135 (Mich. 2008) (unpublished table decision).

Petitioner did not file a petition for a writ of certiorari in the United States Supreme

Court.  Rather, he returned to the state court and filed a motion for relief from judgment, raising

claims concerning the prosecutor's conduct and the effectiveness of trial and appellate counsel.

The trial court denied the motion.  *People v. Crawford*, No. 05-009090-01-FC (3rd Cir. Ct.

Wayne Cnty. Mar. 21, 2008).  Petitioner did not seek leave to appeal that decision in the

Michigan Court of Appeals or the Michigan Supreme Court.

Petitioner then attempted to file a second motion for relief form judgment with the state

trial court arguing that he should be granted an evidentiary hearing on whether he was

incompetent to stand trial, whether he was legally insane during the commission of the charged

offense, and whether trial and appellate counsel were ineffective.  The trial court dismissed the

motion pursuant to Michigan's Court Rule 6.502(G), which prohibits successive motions for

relief from judgment.  Petitioner did not seek, at that time, to appeal the trial court's decision to

either the Michigan Court of Appeals or the Michigan Supreme Court.

Petitioner filed his first habeas petition on October 28, 2008, raising the following four claims: the evidence was insufficient to support his convictions, the convictions for armed robbery and felonious assault violated the Double Jeopardy Clause, he was denied counsel at a critical stage, and he was incompetent to stand trial.  On April 20, 2009, Respondent filed an answer arguing that claims one, three, and four were unexhausted.  On May 28, 2009, Petitioner responded and asked the Court to stay his case on the basis that he had newly-discovered evidence with respect to the Detroit Crime Lab.  The Court granted his request, stayed the case, and allowed him to return to state court to exhaust his unexhausted claims.

Rather than filing a motion for relief from judgment with the state trial court, Petitioner filed a delayed application for leave to appeal the dismissal of his second motion for relief from judgment in the Michigan Court of Appeals.  The Court of Appeals notified Petitioner that his delayed application was defective.  Because Petitioner failed to correct the defects, the Court of Appeals dismissed the delayed application.  *People v. Crawford*, No. 293059 (Mich. Ct. App. Sept. 24, 2009).  Petitioner did not seek leave to appeal the dismissal to the Michigan Supreme Court.

Petitioner then attempted to file a third motion for relief form judgment.  Again, the motion was dismissed under Michigan's Court Rule 6.502(G).  *People v. Crawford*, No. 05-009090-01-FC (3rd Cir. Ct. Wayne Cnty. Jan. 5, 2010).

Petitioner then returned to this Court, asking to delete his unexhausted claims and proceed only on the double-jeopardy claim.  The Court granted his request.  ECF No. 13.  At that time, he did not file an amended petition.  Pursuant to the Wayne County Circuit Court docket

6

sheet, he attempted to file a fourth motion for relief form judgment, which was dismissed. See ECF No. 32-1.

As noted, on July 19, 2012, Petitioner filed another habeas petition with this Court, which was docketed as case number 11-15537. Respondent moved to transfer the case to the Sixth Circuit as a second petition. Rather, the Court denied the motion, construed the petition as an amended petition, ordered the two cases consolidated, and dismissed the second case. Respondent filed her supplemental answer and additional Rule 5 materials on September 7, 2012. ECF No. 32 & 33.

## III.    DISCUSSION

### A.    Standard of Review for Habeas Cases

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the following standard of review for habeas cases. Section 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable

application" occurs when a state court has applied clearly established federal law in an objectively unreasonable manner. *Id.* at 409. Therefore, a federal-habeas court may not issue a writ if it concludes the state court applied clearly established federal law merely erroneously or incorrectly. *Id.* at 411. The application must be unreasonable. *Id.*

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 776, ---, 130 S.Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. ---, ---, 131 S.Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 131 S.Ct. at 786 (citation omitted). In *Peak v. Webb*, 673 F.3d 465, 472 (6th Cir. 2012), the Sixth Circuit observed that "[t]his is a very high standard, which the [Supreme] Court freely acknowledges." The *Peak* Court found that *Harrington* holds that the review standard "is even more constricted than AEDPA's plain language already suggests." *Id.*

Thus, pursuant to section 2254(d), "[a] habeas court must determine what arguments or theories supported or . . . could have supported [] the state court's decision; and then it must ask

8

whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Peak*, 673 F.3d at 472. (internal quotation omitted). The Court also recognizes that habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. ---, ---, 131 S.Ct. 1388, 1398 (2011).

With those standards in mind, the Court proceeds to address Petitioner's claims.

**B.     Petitioner's Claims**

Respondent first argues that claims one, two, and four are barred by the AEDPA's statute of limitations because they do not relate back to the claims raised in the original petition. However, the Court has already ruled on this question when it construed Petitioner's habeas petition, filed on July 19, 2012, as an amended petition. The Court concluded that Petitioner intended for the Court to consider all four claims enumerated in his amended petition and consolidated the cases. *See Stemler v. Burke*, 344 F.2d 393, 396 (6th Cir. 1965). Because Petitioner was challenging the same convictions in both cases, it was clear to the Court that he never intended to file two habeas petitions. *See Mayle v. Felix*, 545 U.S. 644, 649 (2005) (holding that as long as the original and amended petitions state claims that are tied to a common core of operative facts relation back will be in order).

Respondent also argues that claims one, two, and four are barred by the procedural-default doctrine. However, federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved

9

complicated issues of state law." *Id.*

With that, the Court finds that the interests of judicial economy are best served by addressing the merits of claims one, two, and four and will do so seriatim.

### 1.    Unlawful-arrest claim

In his first habeas claim, Petitioner appears to argue that he was arrested without a warrant.  In his amended petition, he states:

> Petitioner declares that an arrest of his person was made at his home in the city of [Detroit, Michigan], without a warrant.  As a result an (sic) photographic array lineup was held at an alternate Detroit Precinct, while [P]etitioner was in-custody at another precinct [without] counsel for the [P]etitioner.

Pet'r's Am. Pet., 4, July 19, 2012, ECF No. 21, 523.  Petitioner appears to argue that, because he was in custody and under arrest, he should have been compelled by the State to appear at a corporeal lineup, and that identification by photograph should not have been used.

First, federal courts have held that a criminal defendant has no constitutional right to a corporeal lineup.  *See Payne v. Smith*, 207 F. Supp. 2d. 627, 645 (E.D. Mich. 2002) (O'Meara. J.) (citing *United States v. Storer*, 956 F.2d 1169, 1992 WL 45764, *2 (9th Cir. 1992) (unpublished); *Branch v. Estelle*, 631 F.2d 1229, 1234 (5th Cir. 1980); *United States v. Gerard*, 781 F. Supp. 479, 481 (E.D. Tex. 1991)).

Second, the issue of Petitioner's identity is moot because he himself removed the issue from contention when he testified that he was with Jones in the house during the robbery.

Finally, to the extent that Petitioner may be raising a Fourth Amendment claim, such a claim is non-cognizable in this proceeding.

10

Federal courts will not address a Fourth Amendment claim upon habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *See Stone v. Powell*, 428 U.S. 465, 494-95 (1976). A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of unlawful arrest in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a [F]ourth [A]mendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000). The relevant inquiry is whether a petitioner had an opportunity to litigate his claims, not whether he or she in fact did so or even whether the Fourth Amendment claim was correctly decided. *Peterson v. Warren*, No. 04-CV-72299-DT, 2007 WL 496683, at *4 (E.D. Mich. Feb. 13, 2007) (Edmunds, J.) (citations omitted). The Court finds that Petitioner's claim was not frustrated by any such mechanism.

Here, Petitioner fails to establish that the State did not offer him an opportunity to challenge the legality of his arrest. He is not entitled to review of his claim when he failed to avail himself of the available state-court procedures for seeking suppression of the allegedly illegal arrest. Habeas relief is not warranted.

## 2. Prosecutorial-misconduct claim

In his second habeas claim, Petitioner alleges that the prosecutor impermissibly withheld the photographs that were used in the photo lineup that the police used to ask the victims to identify the perpetrators. He claims that the photographs would show that the lineup was suggestive.

11

Petitioner's claim is based on *Brady v. Maryland*, 373 U.S. 83 (1963).  In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Id.* at 87.  A *Brady* violation has three components: (1) the evidence must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued.  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *see also Smith v. Cain*, --- U.S. ---, ---, 132 S.Ct. 627, 630 (2012) (confirming the holding in *Brady*).

Petitioner raised this claim in his first motion for relief from judgment, as part of his claim that trial counsel was ineffective.  And, as with his first claim, discussed *supra*, the trial court found that there was no question as to whether Petitioner was one of the robbers because he admitted to participating.  The trial court concluded that even if there were an error relating to the evidence of identity, that error would not have affected the outcome of the trial.  *Crawford*, No 05-009090-01-FC, at 3-4.  The Court agrees.

Accordingly, the Court cannot conclude that the prosecutor committed a *Brady* violation or otherwise violated Petitioner's constitutional rights.  Habeas relief is not warranted.

### 3.      Double-jeopardy claim

In his third habeas claim, Petitioner argues that his convictions and sentences for armed robbery and felonious assault constitutes double jeopardy.  Specifically, he claims that because the elements of felonious assault are contained within the elements of armed robbery, to convict him of both constitutes multiple punishments for the same offense.

The Double Jeopardy Clause "serves the function of preventing both 'successive punishments and . . . successive prosecutions.'" *United States v. Ursery*, 518 U.S. 267, 273 (1996) (citations omitted). "The protection against multiple punishments prohibits the government from 'punishing twice, or *attempting a second time to punish criminally* for the same offense.'" *Id.* (citing *Witte v. United States*, 515 U.S. 389, 396 (1995) (quoting *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938) (emphasis in original)). Although the Double Jeopardy Clause protects "a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the state from prosecuting [a defendant] for such multiple offenses in a single prosecution." *See Ohio v. Johnson*, 467 U.S. 493, 500 (1984). Moreover, whether punishments are multiple, so as to violate the Double Jeopardy Clause, is essentially a question of legislative intent. *Id.* at 499.

Pursuant to Michigan law, in effect at the time Petitioner committed the offenses at issue, armed robbery was defined as a robbery committed while the defendant is or claims to be armed with a dangerous weapon. MCL 750.529. *People v. Carines*, 597 N.W.2d 130, 135 (Mich. 1999). The armed robbery statue does not require actual possession of an actual dangerous weapon. Rather, it applies where a person represents orally or otherwise that he or she is in possession of a dangerous weapon. *Id.* The elements of felonious assault were: (1) an assault; (2) with a dangerous weapon; and (3) with the intent to injure or place the victim in reasonable apprehension of an immediate battery. MCL 750.82; *People v. Avant*, 597 N.W.2d 864, 869 (Mich. Ct. App. 1999). Unlike armed robbery, the defendant must be armed with an actual dangerous weapon used in a manner to inflict injury. *Id.*

13

The Michigan Court of Appeals rejected this claim, reasoning that the two convictions did not arise out of the same act. Petitioner's felonious-assault conviction was based on his kicking Thomas several times, and his armed-robbery convictions were based on his threatening Thompson, Kirkland, and Thomas with a gun, while taking property from them or in their presence. The Court of Appeals stated:

> Defendant argues that his sentences for armed robbery and felonious assault constitute multiple punishments for the same offense. In *People v. Yarbrough*, 107 Mich.App 332, 334-336; 309 NW2d 602 (1981), this Court determined that "[t]he elements of felonious assault are included within armed robbery for purposes of double jeopardy analysis." An assault may be punished separately from an armed robbery, if the facts show that the offenses occurred at separate times. *Id.* at 336. This is consistent with the general rule that there is no double jeopardy violation "if one crime is complete before the other takes place, even if the offenses share common elements or one constitutes a lesser offense of the other." *People v. Lugo*, 214 Mich.App 699, 708; 542 NW2d 921 (1995). There is also no double jeopardy issue when crimes are committed against different persons, even if the crimes occurred during the same criminal transaction. *Id.*

> Here, the felonious assault conviction is based on Thomas's testimony that defendant "stomped" him on the head: This constitutes an assault with a weapon, i.e., defendant's shoes. Defendant was also convicted of armed robbery with regard to Thomas. According to Thomas, defendant initially held a gun to his face, forced him into the kitchen, and placed him in restraints before leaving for another part of the house. When defendant returned to the kitchen, he sat on Thomas's back, went through his pockets, and took all of his money and identification. Defendant then proceeded to "stomp" Thomas in the back of his head with his shoe. Accordingly, this case is distinguishable from *Yarbrough*, *supra* at 334-335, in which both the assault with the gun and the defendant's actions in beating and shoving the victim occurred as the complainant's property was being taken. Here, although the assault with the shoe occurred just seconds after the robbery was complete, it constituted a separate and distinct event because it was not required to complete the robbery. Therefore, we hold that defendant's convictions for felonious assault and armed robbery do not violate the constitutional prohibition against double jeopardy. Moreover, defendant admitted being at the house, and therefore, no prejudice is apparent.

*Crawford*, 2007 WL 1695704, at *2-3 (footnote omitted).

14

The determination by the Court of Appeals is supported by the evidence and legal authority discussed above.  Thus, Petitioner was not subjected to multiple punishments for a single criminal act, but was instead subjected to multiple punishments for multiple criminal acts. Such does not offend the Double Jeopardy Clause.  *See*, e.g., *United States v. Redditt*, 87 F. App'x 440, 447 (6th Cir. May 21, 2003) (the Double Jeopardy Clause is not violated where a defendant receives multiple punishments for committing separate criminal acts because he or she was not subjected to multiple sentences for the same offense); *Williams v. Bournay*, 178 F.3d 1298 (Table), 1999 WL 196532, at *2 (6th Cir. Mar. 22, 1999) (same).

Accordingly, the Court concludes that the Court of Appeals's decision is not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, and habeas relief is not warranted with respect to this claim.

### 4.    Ineffective-assistance-of-counsel claim

Finally, Petitioner claims that trial counsel was ineffective for various reasons.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel.  First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Strickland*, 466 U.S. at 687.  Second, the petitioner must establish that counsel's deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.

15

*Strickland*, 466 U.S. at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  Petitioner bears the burden of overcoming the presumption that the challenged actions were sound trial strategy.  *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id.* at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state-appellate courts reviewing their performance.  "The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal and end citations omitted).  "When [section] 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.  *Id.*

Petitioner's claims of ineffective assistance are vague and he does not adequately explain to the Court how counsel was ineffective.  In his amended petition, he states:

16

> Petitioner claims counsel's cumulative errors, being hastily appointed, failure to ask for a continuance, failure to conduct basic pretrial investigations, failure to subpoena witnesses, failure to file motions, failure to object to in-court identification by [State's] untimely notice of habitual (3rd) sentence enhancement. Failure to file timely notice.

Pet'r's Am. Pet. ¶ 12(D), ECF No. 21, 524.

Pursuant to the Wayne County docket sheet, counsel was appointed on September 8, 2005, more than three months before Petitioner's bench trial. Petitioner does not explain why three months was not enough time for counsel to prepare for trial or how he was prejudiced by failing to file a motion for a continuance.

In his first motion for relief from judgment, Petitioner argued that, had counsel conducted a reasonable investigation, he would have been able to object to the in-court identification. However, as noted, this is not an issue because Petitioner himself testified that he was present at the robbery. Thus, there is no reasonable probability that an objection–even a successful objection–to the victims' in-court identification of him would have had any effect on the outcome of the trial. Moreover, counsel cannot be deemed ineffective for failing to raise a meritless objection. *See Bradley v. Birkett*, 192 F. App'x 468, 475 (6th Cir. 2006).

In a related argument, Petitioner also claims that counsel should have filed a motion for discovery which would have revealed the flaws in the lineup procedure. Again, Petitioner cannot establish prejudice because identification was not an issue.

Petitioner's claim that "untimely notice of habitual (3rd) sentence enhancement," lacks merit. Petitioner was not sentenced as a habitual offender.

17

With respect to Petitioner's claim that counsel failed to file a timely notice, it is not clear to the Court to what he is referring. Petitioner's first motion for relief from judgment does not assist the Court in discerning the claim. Rather, the trial court construed his claims as follows:

> The defendant argues that he was denied a fair trial and effective assistance of counsel when his trial attorney failed to challenge the impermissibly suggestive photo line-up and object to the in-court identification. The defendant complains that his trial attorney failed to conduct a reasonable investigation into the photos used in the improper line up array and challenge the identification procedure prior to his trial. The defendant claims that the prosecutor intentionally withheld exculpable evidence when he failed to present the photos used in the line up to the defense under the court's discovery order. The defendant argues that the trial court abused its discretion when it ruled that the in-court identification procedure was not impermissibly suggestive and that the witnesses had an independent basis for their identification of the defendant as one of the perpetrators.

*Crawford*, No. 05-009090-01-FC, at 2.

As stated, the trial court denied the motion because Petitioner's testimony made the motion moot since he admitted to being one of the perpetrators. Thus, the trial court found that he was unable to carry his burden of establishing prejudice. The trial court's decision was not an unreasonable application of the *Strickland* standard. Habeas relief is not warranted.

### 5. Motion to amend

As stated, on December 21, 2012, Petitioner filed a motion to amend his habeas petition. ECF No. 36. Petitioner's motion is somewhat incoherent and rambling. It appears to the Court that he is requesting release from prison and the Court's consideration of his habeas petition. Given the Court's decision in this case, the motion is denied as moot.

18

### C.      Certificate of Appealability

Before Petitioner may appeal this Court's decision, a certificate of appealability must be issued.  Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253.  Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009, requires that a district court must "issue or deny a [certificate of appealability] when it enters a final order adverse to the applicant . . . .  If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11, Rules Governing Section 2254 Proceedings.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2). Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not be issued.  28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).  To receive a certificate of appealability "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (internal quotes and citations omitted).

For the reasons stated in its opinion and order, the Court concludes that reasonable jurists would not find its assessment of Petitioner's claims debatable or wrong.  The Court therefore declines to issue Petitioner a certificate of appealability.

Although the Court declines to issue Petitioner a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* is a lower standard than the

19

standard for certificates of appealability.  *See Foster v. Ludwick*, 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002) (Rosen, J.) (citation omitted).  Where a certificate of appealability may only be granted if a petitioner makes a substantial showing of the denial of a constitutional right, a court may grant *in forma pauperis* status if it finds that an appeal is being taken in good faith.  *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster*, 208 F. Supp. 2d at 765.

The Court concludes that an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal.  Also, because Petitioner was granted *in forma pauperis* status in this Court, he may proceed on appeal without further authorization.  Fed. R. App. P. 24(a)(3).

## IV.    CONCLUSION

Accordingly, IT IS ORDERED that the amended petition for a writ of habeas corpus [ECF No. 21] is DENIED.

IT IS FURTHER ORDERED that the Court declines to issue Petitioner a certificate of appealability but will GRANT him permission for an application for leave to proceed *in forma pauperis* on appeal.

IT IS FURTHER ORDERED that Petitioner's motion to amend [ECF No. 36] is DENIED as moot.

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATED: <u>April 16, 2013</u>

CERTIFICATE OF SERVICE

    I hereby certify that on the above date a copy of this order was served upon the Petitioner via ordinary U.S. Mail, and Counsel for the Respondent, electronically.

s/Bernadette M. Thebolt
Case Manager